USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORMAN MAURICE ROWE, M.D. MHA LLC, et al.,

Plaintiffs,

-against-

OXFORD HEALTH INS., INC.,

Defendant.

23-CV-10344 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Before the Court is Defendant Oxford Health Insurance, Inc.'s ("Oxford") motion to dismiss Plaintiffs' second amended complaint (the "Complaint," "Second Amended Complaint," or "SAC"). For the following reasons, the motion is GRANTED without leave to amend.

**BACKGROUND**[1]

Plaintiffs are four providers whose sole shareholder or member is Norman Maurice Rowe, M.D. SAC ¶¶ 9–12. Defendant is Oxford, a health insurance provider. Plaintiffs are outside Oxford's network of providers, meaning they are "non-participating providers," in the terminology of Oxford's health insurance plans. Nevertheless, Plaintiffs allege that Oxford "by its words and course of conduct" promised to reimburse Plaintiffs as if they were in-network providers for performing breast reduction surgeries on 21 patients (the "Patients") whom Oxford insured. *See id.* ¶¶ 95–104. After the surgeries, Plaintiffs submitted bills to Oxford for reimbursement. *Id.* ¶ 103. Oxford then reimbursed Plaintiffs for less than it would have if

[1] The following facts are taken from the Complaint or are facts subject to judicial notice and assumed true solely for purposes of resolving this motion. *See* Dkt. No. 49. The Court shall refer to the parties' memoranda of law in support of and opposition to the motion to dismiss as follows: Dkt. No. 51 ("Mot."); Dkt. No. 55 ("Opp."); and Dkt. No. 56 ("Reply").

Plaintiffs were in-network providers. *Id.* ¶ 104. Parsing the Complaint, Plaintiffs contend that—because Oxford reimbursed Plaintiffs at the lower out-of-network provider rates, Plaintiffs issued the Patients what are known as "surprise bills." *Id.* ¶¶ 21, 174.

The Patients' insurance plans define a surprise bill as a bill for services performed by a non-participating physician at a participating hospital either without a patient's knowledge, due to a medical emergency, or because no participating physician was available. *See* Dkt. No. 49-2 at 3..[2] Plaintiffs filed excerpts of the plans with the Second Amended Complaints. The excerpts state:

> You will be held harmless for any Non-Participating Provider charges for the surprise bill that exceeds your Copayment, Deductible or Coinsurance if You assign benefits to the Non-participating Provider in writing. In such cases, the Non-Participating Provider may only bill You for Your Copayment, Deductible or Coinsurance.

*Id.* In the event of a dispute regarding a surprise bill, the excerpts state, either Oxford or a non-participating provider "may submit a dispute involving a surprise bill to an independent dispute resolution entity ('IDRE') assigned by the state." *Id.* at 10. The excerpts also reference the Employee Retirement Income Security Act ("ERISA") and prohibit assignments of benefits, except to providers for surprise bills. *Id* at 2.

Acting under the surprise bill provisions, Plaintiffs secured benefit assignments from the Patients..[3] Plaintiffs contend that the plans required Oxford to indemnify the Patients for any surprise bills. SAC ¶ 115. Because the Patients assigned their benefits to Plaintiffs, Plaintiffs

---

[2] The Court cites only one of the excerpts when it is indicative of each. Plaintiffs allege that their providers performed the breast reduction surgeries at a participating hospital while a participating physician was unavailable. SAC ¶¶ 95, 99. The Court may consider the excerpts because they are incorporated by reference in the complaint. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

[3] After a discovery conference culminating in a Court order directing their production, Plaintiffs filed the assignment forms on July 31, 2024. *See* Dkt. No. 46-2.

now seek the difference between each Patient's copayment and the cost of their respective "surprise bills."

The Second Amended Complaint includes five counts: breach of contract, unjust enrichment, promissory estoppel, and two counts under ERISA. The breach of contract claim alleges that Oxford violated the agreement in the insurance plans to indemnify the Patients for surprise bills and violated the parties' implied contract. SAC ¶¶ 166–78. The unjust enrichment claim alleges that Oxford was unjustly enriched by not indemnifying the Patients for the surprise bills. *Id.* ¶¶ 180–189. The promissory estoppel claim alleges that the Patients detrimentally relied on Oxford's promise that it would hold the Patients harmless. *Id.* ¶¶ 191–200. The first ERISA count asserts that Plaintiffs "are entitled to payment under Oxford's ERISA health plans to recover the monies owed for a surprise bill." SAC ¶ 137. And the second ERISA count alleges that Oxford failed to comply with ERISA claims procedure regulations. *Id.* ¶ 161. Regarding the two ERISA counts, Plaintiffs allege that they exhausted each plan's administrative requirements by filing a "level 1 appeal" and a "level 2 appeal." *Id.* ¶ 140. Regardless, the Complaint states, exhaustion would be futile because Oxford disagrees that Plaintiffs are entitled to more reimbursements and exhaustion is unnecessary because Oxford violated ERISA's procedural requirements. *Id.* ¶¶ 162–63.

Presently before the Court is Oxford's motion to dismiss the Second Amended Complaint. Dkt. No. 50. Accompanying that motion is a request for judicial notice of 30 state court actions that Plaintiffs brought against Oxford. Dkt. No. 52. These lawsuits centered on what Plaintiffs alleged was Oxford's breach of the oral contracts to reimburse Plaintiffs as in-network providers. *Id.* Except where Plaintiffs voluntarily dropped the lawsuits, the State courts uniformly dismissed them. Oxford argues that the State law claims are barred by *res judicata*

and collateral estoppel, are preempted by ERISA, and fail on the merits. Mot. at 5–18. Oxford also argues that the ERISA claims fail because Plaintiffs did not adequately plead exhaustion or identify which parts of the plans Oxford failed to honor. *Id.* at 19–24.

Plaintiffs' opposition spans sixty (60) pages and seeks to distinguish this case from the thirty-odd state cases because the present lawsuit involves Plaintiffs acting as the Patients' assignees. *See* Opp. at 14 ("The claims are not the same claims as asserted below because the SAC seeks to enforce an indemnification provision contained in an ERISA plan. The state court complaints were for contracts between the providers and Defendant."). It marshals myriad arguments why the Court should deny the motion to dismiss. And it asks that, if the Court were inclined to grant the motion, it issue an order "[g]ranting Plaintiffs the opportunity to plead those facts this Court finds should be alleged and are not." Opp. at 48–49.

## DISCUSSION

The five counts of the Complaint fall into two groups. The first group consists of the breach-of-contract, unjust enrichment, and promissory estoppel counts. These are state-law claims that derive from, hinge on, and relate to the Patients' plans. ERISA preempts these claims, so they must be dismissed. The second group consists of Plaintiffs' two ERISA counts. Because Plaintiffs neither adequately plead exhaustion nor plausibly allege that Oxford violated a term of the plans, these claims must be dismissed as well.

### I. LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)..[4] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). That universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

## II. ERISA PREEMPTS THE STATE-LAW CLAIMS

ERISA establishes a comprehensive civil enforcement scheme codified at Section 502(a). To ensure that "all covered benefits plans will be governed by unified federal law" in Section 502(a), *Peneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008), ERISA

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

preempts "any and all State laws" that are "relate[d] to any employee benefit plan." 29 U.S.C. § 1144(a)–(b).

The Supreme Court in *Aetna Health Inc. v. Davila* established a two-prong framework to guide the analysis regarding when ERISA preemption applies. 542 U.S. 200, 210 (2004). Prong one is satisfied if a plaintiff brings a claim that he or she, "at some point in time, could have brought . . . under ERISA § 502(a)(1)(B)." *Id.* Courts in the Second Circuit assess this prong in two steps. At prong one step one, a court determines if a plaintiff "is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011). And at prong one step two, it considers "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* Prong two of *Davila*, meanwhile, is satisfied if "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. ERISA preempts a state-law claim only if both *Davila* prongs are met. *Montefiore Med. Ctr.*, 642 F.3d at 328.

**A. *Davila* Prong One, Step One**

Plaintiffs are the "type of party" that may bring a claim under § 502(a)(1)(B). Section 502(a)(1)(B) authorizes a plan "participant or beneficiary" to bring a claim. Granted, Plaintiffs are neither. But the Second Circuit has recognized a "providers exception" whereby a health care provider may sue as a beneficiary if a beneficiary assigned his or her claims to the provider. *See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20-CV-09183 (AJN), 2021 WL 4437166, at *9 (S.D.N.Y. Sept. 28, 2021) (citing *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017)); *see Montefiore Med. Ctr.*, 642 F.3d at 328, 333 (determining that hospital-plaintiff could sue as beneficiaries because it received assignments of beneficiaries' right to payments). In assessing whether the "providers

exception" applies, a court should also be mindful of whether a relevant insurance plan prohibits assignment of benefits. *McCulloch Orthopaedic Surgical Servs.*, 857 F.3d at 147 (holding that the "providers exception" could not apply because the relevant insurance plans prohibited a beneficiary from assigning benefits to anyone).

The Patients are beneficiaries per Section 502(a)(1)(b). Their plans permit assignment of benefits to providers to resolve surprise bills. Dkt. No. 49-2 at 2. Plaintiffs are providers. And the Patients assigned Plaintiffs their rights to seek payment. *See* Dkt. No. 53-2. So, accepting for purposes of this motion Plaintiffs' assertion that the bills at issue in this case qualify as "surprise bills" within the meaning of the relevant insurance plans, this case fits within the "providers exception" and therefore satisfies *Davila* prong one step one. *Montefiore Med. Ctr.*, 642 F.3d at 329.

**B. *Davila* Prong One, Step Two**

Next, Plaintiffs' claims can readily be construed as colorable claims for relief under Section 502(a)(1)(B). That provision permits a participant or beneficiary to "recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs allege they are entitled to indemnification under the Patients' plans, *i.e.*, they seek to recover a benefit. And Plaintiffs' entitlement to indemnification derives from the plans. *See* SAC ¶ 157 (arguing that Oxford denied a benefit afforded under the plan). Therefore, *Davila* prong one step two is satisfied, as well.

**C. *Davila* Prong Two**

*Davila* prong two is satisfied if "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. The state-law claims hinge entirely on the plan. The breach-of-contract claim is that Oxford breached the agreement in the Patients' plans to hold the Patients harmless for surprise bills. The unjust enrichment claim

hinges on Oxford being unjustly enriched by failing to make payments guaranteed under the plans. And the promissory estoppel claim centers on the Patients' detrimentally relying on Oxford's alleged promise in the plans to indemnify them. Therefore, the legal duty animating the state-law claims derives exclusively from the plans..[5]

Plaintiffs argue fleetingly in the Complaint that the agreements between Plaintiffs and Oxford created an independent legal duty. SAC ¶ 114. But Plaintiffs specifically disavow that claim in their briefing. *See* Opp. at 34 ("Crucially, the Providers are not suing to enforce the ad-hoc agreement that arose between the Providers and Oxford. Indeed, this Court should strike paragraphs 86[–]94."). Nevertheless, the Second Circuit in a similar case held that ERISA preemption applied, and therefore necessarily rejected that an alleged implied contract to treat a provider as "in-network" provider created a legal duty independent of ERISA. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health and Life Ins. Co.* ("*Cigna*"), 2024 WL 2813721 (2d Cir. June 3, 2024) (holding that ERISA preempted claims because the implied contract "relies on

[5] Even if preemption did not apply, the state-law claims would fail on the merits. The unjust enrichment claim fails because the plans created a valid contract, unjust enrichment is a "quasi-contract claim," *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005), and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract," *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006). Furthermore, the surgeries were at the behest of the Patients, not Plaintiffs. "[W]here the services were not provided at the behest of the plaintiff but rather by the patient, dismissal of the quasi-contract causes of action against the insurer defendant is appropriate." *New York Grp. For Plastic Surgery LLP v. Anthem Blue Cross*, No. 20-CV-04234 (JPO), 2022 WL 524106, at *2 (S.D.N.Y. Feb. 22, 2022) (quoting *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, No. 17-CV-01674, 2021 WL 1224883, at *14 (E.D.N.Y. Mar. 31, 2021)). As to the promissory estoppel claim, Plaintiffs as the Patients' assignees cannot bring a promissory estoppel claim regarding the alleged oral promise to treat Plaintiffs as in-network providers because that promise was never made to the Patients. *See Frio Energy Partners, LLC v. Finance Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023) (explaining that promissory estoppel requires reliance by the person or entity to whom the promise was made). And Plaintiffs cannot bring a promissory estoppel claim regarding the alleged indemnification promise in the policies because promissory estoppel does not apply if there is a written contract. *Kortright Cap. Partners LP v. Investcorp. Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 361 (S.D.N.Y. 2017). Last, the breach-of-contract claim likewise fails on the merits for the reasons discussed *infra* n.7.

the plan" and was "pursuant to [an] ERISA plan"); *see Rowe Plastic Surgery of N.J. v. Aetna Life Ins. Co.* No. 23-CV-03632 (SJB) (LKE), 2025 WL 1940325, at *4–7 (E.D.N.Y. July 15, 2025) (summarizing *Cigna* and holding that ERISA preempted claims on virtually identical facts).

As both prongs of *Davila* are satisfied, ERISA preempts Plaintiffs' State-law claims.

**D. Plaintiffs' Counterarguments**

In opposition, Plaintiffs argue that Oxford has not shown that the Patients health plans are governed by ERISA because "[o]nly health plans that are self-insured and self-funded are governed by ERISA." Opp. at 24. Plaintiffs' understanding about which plans ERISA governs is flatly wrong. Plaintiffs' argument also belies the Complaint, which includes two claims under ERISA. *See* SAC ¶ 133 ("By virtue of its administration or insuring of [the Patients'] Plans[,] Oxford is an ERISA entity under the ERISA statute."); *id.* at 31 (seeking reasonable Attorney's fees "for having to bring this action to recover ERISA benefits"). And Plaintiffs' contention ignores that excerpts of the plans included with the Second Amended Complaint explicitly reference ERISA. *See, e.g.*, Dkt. No. 49-2 at 3.

Elsewhere, Plaintiffs allege that the state-law claims do not relate to ERISA because the "SAC alleges that the reimbursement for these surgeries was as if an were [sic] rendered by an In-Network provider" and the "SAC alleges reimbursement for services rendered by In-Network providers is pursuant to a fee schedule that is agreed to by the In-Network provider and Oxford." Opp. at 25. The Second Circuit highlighted analogous facts in determining that ERISA preempted state-law claims. *Cigna*, 2024 WL 2813721, at *2.

In summary, the three State-law claims are preempted by ERISA and must be dismissed.

**III. PLAINTIFFS FAIL TO PLEAD EXHAUSTION**

The two ERISA claims must be dismissed as well, given Plaintiffs' failure to plead exhaustion. There is a "firmly established federal policy favoring exhaustion of administrative

remedies in ERISA cases." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006). Exhaustion in ERISA cases refers to "those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Failure to exhaust is an affirmative defense. But a defendant may raise it in a motion to dismiss "if the defense appears on the face of the complaint." *Northern Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22-CV-06087 (PKC), 2023 WL 5956142, at *4 (S.D.N.Y. Sept. 13, 2023) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). The defense appears on the face of a complaint if, for example, a plaintiff fails to plead facts "suggesting any effort to exhaust the remedies available through his ERISA administrative plan." *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d. 267, 296 (E.D.N.Y. 2021) (quoting *Abe v. New York Univ.*, 14-CV-09323 (RJS), 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2016)). "[A] blanket assertion of exhaustion of administrative remedies in a complaint is insufficient to withstand a motion to dismiss." *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 450 (S.D.N.Y. 2008). And "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe*, 2016 WL 1275661, at *5.

Plaintiffs have failed to adequately plead exhaustion. Plaintiffs allege that, upon receipt of the underpayments, Plaintiffs "exhausted any internal or administrative remedy required by the Relevant Plan by submitting a level 1 appeal and a level 2 appeal." SAC ¶ 140. It is anyone's guess what this means. The Complaint provides no further detail about what a "level 1 appeal" or a "level 2 appeal" is. It does not allege what steps any of the Patients' plans required Plaintiffs to take to exhaust (nor does it allege whether the various plans imposed different

requirements). And it does not explain if or how Plaintiffs diligently completed those steps. These omissions are fatal to the Complaint. *See Gordon Surgical Grp., P.C. v. Empire HealthChoice HMO, Inc.* 724 F. Supp. 3d 158, 168 (S.D.N.Y. 2024) ("Plaintiffs were required to provide the relevant plans' exhaustion requirements and allege[] sufficient facts showing that they followed the relevant procedure as to *each* medical claim."); *Da Silva Plastic & Reconstructive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 22-CV-07121, 2025 WL 240917, at *5 (E.D.N.Y. Jan. 17, 2025) (determining that a plaintiff failed to exhaust because the complaint lacked "a single specific illustrative description of particular claims that plaintiff attempted to exhaust" and included only "conclusory assertions" that "fail[ed] to match any of the claims with the grievance and appeal processes that plaintiff allegedly took").

Furthermore, Plaintiffs only allege that they appealed Oxford's decision not to reimburse Plaintiffs as if they were in-network providers. SAC ¶ 140. Nowhere do Plaintiffs allege that they pursued appeals or administrative remedies concerning the Patients' rights regarding surprise bills. Therefore, Plaintiffs have not alleged any attempt at exhausting the issues relevant to this lawsuit.

Plaintiffs' counterarguments fail in quick succession. The operative Complaint alleges that administrative remedies "are deemed exhausted" because Oxford "failed to comply with the substantive and procedural requirements of ERISA." SAC ¶ 149. This is an unsupported legal conclusion that the Court disregards. *Ruderman v. Liberty Mut. Grp., Inc.*, No. 21-817, 2022 WL 244086 (2d Cir. Jan. 27, 2022); *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-07972 (VEC), 2020 WL 4895675, at *3 (S.D.N.Y. Aug. 19, 2020) (disregarding conclusory statements that a defendant violated terms of a plan)..[6]

---

[6] Paragraph 160 of the operative Complaint alleges various steps that Oxford did not take that Plaintiffs contends 29 U.S.C. § 1133 require. But Plaintiffs never allege that they pursued administrative

Plaintiffs argue in vague terms that exhaustion was not required because Oxford's claim procedures were unreasonable. Opp. at 48. 29 C.F.R. § 2560.503-1(b) requires that every "employee benefit plan shall establish and maintain reasonable procedures." The Complaint contains no specificity about which part(s) of the claim procedures were unreasonable. The Court cannot determine the basis for this argument and hence rejects it.

Finally, Plaintiffs argue that exhaustion would have been futile. SAC ¶ 143; Opp. at 48. Futility, on a "rare occasion," excuses a plaintiff from needing to exhaust her ERISA claim. *Antell v. United Healthcare Ins. Co. of N.Y.*, No. 10-CV-03194 (RJS), 2012 WL 13042822, at *3 (S.D.N.Y. Mar. 16, 2012). But only if a plaintiff makes a "clear and positive showing" that "seeking review by the carrier would be futile." *Jones v. UNUM Life Ins. Co. of America,* 223 F.3d 130, 140 (2d Cir. 2000) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). Plaintiffs come nowhere close to meeting this standard. Instead, they blithely assert that exhaustion would be futile because "Oxford maintained that it had paid everything it was obligated to pay." Opp. at 48. Disagreements are why administrative remedies exist in the first place. The mere presence of one, without more, therefore cannot establish futility..[7]

---

remedies concerning Oxford's apparent failure to indemnify the Patients, only that they pursued administrative remedies concerning Oxford's decision not to treat Plaintiffs as in-network providers. Because Plaintiffs have not pursued any administrative remedies concerning the claims at issue in this lawsuit, there would be no basis for Oxford to provide the steps described in paragraph 160. For example, Plaintiffs allege that Oxford did not provide the basis for its decision not to indemnify the Patients, but Plaintiffs never allege that Plaintiffs pursued administrative remedies concerning that decision. Similarly, Plaintiffs never allege that the Patients or Plaintiffs as their assignees sought—and Oxford denied—indemnity for a surprise bill in an administrative proceeding. Finally, the plan excerpts indicate that the appropriate administrative remedy was to submit the dispute to a State-assigned IDRE. Accordingly, it is unclear how the provisions at 29 U.S.C. § 1133 would even apply to this case.

[7] Even if Plaintiff had exhausted the administrative remedies, their ERISA claims fail on the merits because Plaintiffs have failed to adequately allege which parts of each of the Patients' plans that Oxford violated. *See Gordon Surgical Grp., P.C.*, 724 F. Supp. 3d at 170. Plaintiffs allege that the plans required Oxford to indemnify the Patients for any surprise bills. But they do not point to any part of the

## IV. THE COMPLAINT IS DISMISSED WITHOUT LEAVE TO AMEND

The final issue is whether leave to amend will be granted. It will not. "It is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). The usual practice in this circuit after granting a motion to dismiss is to provide leave to amend a complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). But a court may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," or if a plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

Plaintiffs have filed roughly 30 cases in state court against Oxford involving identical or similar claims. Oxford has borne the burden of litigating, briefing, and defending each of them. In the wake of those state court actions, Plaintiffs commenced this lawsuit, which is nearing its third birthday. Put simply, it is not fair to require Oxford to litigate these same claims forever, in multiple iterations that do not present any advances on the merits. Furthermore, Plaintiffs have already twice been granted leave to amend their complaint. There is little reason to believe that the third time will be the charm.

Additionally, Plaintiffs failed to specify how an amendment would cure deficiencies in the Complaint. Plaintiffs asked for an order, *inter alia*, "granting Plaintiffs the opportunity to

---

plans as including this requirement. And the excerpts of the plans included with the Complaint do not feature that requirement. The relevant portion of the excerpts provide that a patient will be held harmless for a surprise bill "***if*** You," *i.e.*, the Patient, "assign benefits to the Non-Participating Provider in writing. In such cases, the non-participating provider may only bill You for Your Copayment, Deductible or Coinsurance." *See, e.g.*, 49-2 at 3 (emphasis added). The plain meaning is that a patient would be held harmless *if* the patient assigned benefits to the provider because then the provider would not be able seek anything greater than a patient's copayment. Nothing about that language suggests Oxford bears an obligation deriving from the plans to indemnify the Patients for surprise bills, because the Patients would not be required to pay those bills.

plead those facts this Court find should be alleged and are not" or, in the alternative, an "opportunity to have the assignments re-executed to meet the Court's requirements." Opp. at 48–49. This statement does nothing to specify how a further amendment could possibly cure the deficiencies in the latest version of the Complaint. Accordingly, the Court will not grant leave to amend. *See TechnoMarine SA*, 758 F. 3d at 506 (affirming district court's denial of leave to amend as plaintiff "entirely failed to specify how it could cure its pleading deficiencies"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (denying plaintiffs leave to amend because "plaintiffs have identified no additional facts or legal theories—either on appeal or to the District Court—they might assert if given leave to amend").

**CONCLUSION**

For the foregoing reasons, Oxford's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of Oxford and close this case.

Dated: September 1, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge